489 So.2d 1125 (1986)
STATE of Florida, Appellant,
v.
Salvadore SAIEZ, Appellee.
No. 67249.
Supreme Court of Florida.
June 12, 1986.
*1126 Jim Smith, Atty. Gen. and Randi Klayman Lazarus, Asst. Atty. Gen., Miami, for appellant.
Steven H. Haguel of Bill Clay, P.A., Miami, for appellee.
BARKETT, Justice.
We have before us State v. Saiez, 469 So.2d 927 (Fla. 3d DCA 1985). This appeal concerns the constitutionality of a statute. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution.
On February 24, 1984, Salvadore Saiez was charged with three violations of section 817.63, Florida Statutes (1983). Under counts 1 and 3 Saiez was charged with the unlawful possession of embossing machines. Under count 2 Saiez was charged with possession of incomplete credit cards. Section 817.63 provided in relevant part:
Possession of machinery, plates or other contrivance or incomplete credit cards.  ... a person possessing with knowledge of its character any machinery, plates or any other contrivance designed to reproduce instruments purporting to be the credit cards of an issuer who has not consented to the preparation of such credit cards, violates this subsection and is subject to the penalties set forth in s. 817.67(2)... . (Emphasis added.)
Saiez filed a motion to dismiss counts 1 and 3, alleging that the portion of the statute prohibiting the possession of the machinery designed to reproduce instruments purporting to be credit cards was unconstitutional because it prohibited the mere possession of embossing machines regardless of whether they were being used legitimately. The trial court agreed and dismissed counts 1 and 3. The Third District Court of Appeal affirmed the dismissal. For reasons other than those expressed by the Third District, we affirm its decision.
The district court held that part of section 817.63 was unconstitutionally overbroad[1] and vague. Although we agree that the portion of section 817.63 in question is unconstitutional, it is not because of the doctrines of overbreadth or vagueness.
As Justice Overton noted in Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351, 1353 (Fla. 1984), "[t]he overbreadth doctrine applies only if the legislation `is susceptible of application to conduct protected by the First Amendment.'" See also Broadrick v. Oklahoma, 413 U.S. 601, 611-13, 93 S.Ct. 2908, 2915-17, 37 L.Ed.2d 830 (1973); Dombrowski v. Pfister, 380 U.S. 479, 486-87, 85 S.Ct. 1116, 1120-21, 14 L.Ed.2d 22 (1965); Carricarte v. State, 384 So.2d 1261, 1262 (Fla.), cert. denied, 449 U.S. 874, 101 S.Ct. 215, 66 L.Ed.2d 95 (1980). This doctrine operates as an exception to the traditional rule of standing *1127 which does not permit a person to whom a statute may constitutionally be applied to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others. New York v. Ferber, 458 U.S. 747, 767, 102 S.Ct. 3348, 3359, 73 L.Ed.2d 1113 (1982). The traditional rule is relaxed in the first amendment area because of "weighty countervailing policies." Id. at 768, 102 S.Ct. at 3361; United States v. Raines, 362 U.S. 17, 22-23, 80 S.Ct. 519, 523-524, 4 L.Ed.2d 524 (1960).[2]See generally Tribe, American Constitutional Law, 720-22 (1978); Note, The First Amendment Overbreadth Doctrine, 83 Harv.L. Rev. 844 (1970). As explained by Justice Ehrlich:
In the first amendment area, this overbreadth argument is permitted because of the judicial assumption that an overbroad statute may well have a chilling effect on protected expression. An overbroad regulation may not be enforced until the scope of regulation is narrowed by a limiting construction or partial invalidation to remove the threat to protected expression.
City of Daytona Beach v. Del Percio, 476 So.2d 197, 202 (Fla. 1985). The first amendment is not implicated by section 817.63 in any way; consequently, the overbreadth doctrine is not applicable in this case.
Nor is section 817.63 unconstitutionally vague. A penal statute is vague if it fails to "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and ... encourage[s] arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). See also Southeastern Fisheries, 453 So.2d at 1353 (a vague statute fails to give adequate notice of what conduct is prohibited, and due to that imprecision, invites arbitrary and discriminatory enforcement). Ordinary people do not have to guess at the meaning of section 817.63. The statute clearly and unambiguously prohibits the possession of embossing machines by anyone.
Although Saiez's overbreadth and vagueness challenges fail, section 817.63 is nevertheless unconstitutional. It violates substantive due process under the fourteenth amendment to the United States Constitution and article I, section 9 of the Florida Constitution. The due process clauses of our federal and state constitutions establish a "sphere of personal liberty" for every individual subject only to reasonable intrusion by the state in furtherance of legitimate state interests. See Del Percio, 476 So.2d at 202 (quoting from Richards v. Thurston, 424 F.2d 1281, 1284 (1st Cir.1970)).
The legislature enacts penal statutes, such as section 817.63, under the state's "police power" which derives from the state's sovereign right to enact laws for the protection of its citizens. See Carroll v. State, 361 So.2d 144, 146 (Fla. 1978). Such power, however, is not boundless and is confined to those acts which may be reasonably construed as expedient for protection of the public health, safety, welfare, or morals. Hamilton v. State, 366 So.2d 8, 10 (Fla. 1978); Newman v. Carson, 280 So.2d 426, 428 (Fla. 1973). The due process clauses of our federal and state constitutions do not prevent the legitimate interference with individual rights under the police power, but do place limits on such interference. State v. Leone, 118 So.2d 781, 784 (Fla. 1960). See also Coca-Cola Co., Food Division v. State, Department of Citrus, 406 So.2d 1079, 1084-85 (Fla. 1981), appeal dismissed sub nom. Kraft, Inc. v. Florida Department of Citrus, 456 U.S. 1002, 102 S.Ct. 2288, 73 L.Ed.2d 1297 (1982); State ex rel. Walters v. Blackburn, 104 So.2d 19 (Fla. 1958); Conner v. Sullivan, 160 So.2d 120, 122 (Fla. 1st DCA 1963), cert. denied, *1128 165 So.2d 176 (Fla. 1964). See generally W. LaFave and A. Scott, Handbook on Criminal Law § 20, at 136-137 (1972).
Moreover, in addition to the requirement that a statute's purpose be for the general welfare, the guarantee of due process requires that the means selected shall have a reasonable and substantial relation to the object sought to be attained and shall not be unreasonable, arbitrary, or capricious. See Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934); Lasky v. State Farm Insurance Co., 296 So.2d 9, 15 (Fla. 1974); L. Maxcy, Inc. v. Mayo, 103 Fla. 552, 139 So. 121, 129 (1931).
Section 817.63 was obviously an attempt by the legislature to curtail credit card fraud. There is no question that the curtailment of credit card fraud is a legitimate goal within the scope of the state's police power. Having established that the legislative purpose is proper, we must now determine whether the means chosen by the legislature bears a rational relationship to the concededly proper goal. We determine that it does not.
In Delmonico v. State, 155 So.2d 368 (Fla. 1963), this Court declared a statute that prohibited the possession of spearfishing equipment in an area of Monroe County to be unconstitutional. The Court explained:
Fundamental to much of appellants' argument is the contention that the particular section of the statute here involved ... is improper because it fails to require proof of the intent essential to any crime such as a showing that the equipment was possessed with an intent to put it to unlawful use. Instead the law penalizes the mere possession of equipment which in itself is wholly innocent and virtually indispensable to the enjoyment of the presently lawful and unrestricted right of appellants in common with the public at large to engage in spearfishing in waters on all sides of the area covered by the statute... .
In order to meet constitutional limitations on police regulation, this prohibition, i.e. against possession of objects having a common and widespread lawful use, must under our previous decisions be reasonably "required as incidental to the accomplishment of the primary purpose of the Act." There is little doubt that the penalty against possession of such equipment will simplify the problem of enforcing the primary prohibition against spearfishing in the area covered by the statute. Expediency, however, is not the test, and we conclude that convenience of enforcement does not warrant the broad restriction imposed by Sec. 370.172(3).
Id. at 369-70 (footnotes omitted). See also Foster v. State, 286 So.2d 549, 551 (Fla. 1973) ("[i]t would be an unconstitutional act  in excess of the State's police power  to criminalize the simple possession of a screwdriver").
The same rationale was employed by this Court in Robinson v. State, 393 So.2d 1076 (Fla. 1980). In that case, a statute that prohibited the wearing of any mask or covering "whereby any portion of the face is so hidden, concealed, or covered as to conceal the identity of the wearer" was deemed unconstitutional. The Court explained that the statute violated due process in that it was "susceptible of application to entirely innocent activities" and created "prohibitions that completely lack any rational basis." Id. at 1077. Compare State v. Yu, 400 So.2d 762, 765 (Fla. 1981) (court found the challenged legislation bore a reasonable relationship to legitimate state objectives and did not violate due process), appeal dismissed sub nom. Wall v. Florida, 454 U.S. 1134, 102 S.Ct. 988, 71 L.Ed.2d 286 (1982).
In State v. Walker, 444 So.2d 1137 (Fla. 2d DCA), affirmed and lower court opinion adopted, 461 So.2d 108 (Fla. 1984), the defendant had been charged with violating section 893.13(2)(a)7, Florida Statutes (1981), which prohibited the possession of a lawfully dispensed controlled substance in any container other than that in which the *1129 substance was originally delivered. Judge Grimes, noting that the prohibited conduct lacked any rational connection to the legislative purpose of controlling drug distribution, correctly analyzed the balance to be maintained between substantive due process and the police power of the state:
The basic test of substantive due process is whether the state can justify the infringement of its legislative activity upon personal rights and liberties. So long as the legislative activity does not encroach upon constitutional guarantees, or run afoul of federal statutory law, a state has a broad scope of discretion in which to regulate the conduct of its citizens... . It need only be shown that the challenged legislative activity is not arbitrary or unreasonable... . Courts will not be concerned with whether the particular legislation in question is the most prudent choice, or is a perfect panacea, to cure the ill or achieve the interest intended... . If there is a legitimate state interest which the legislation aims to effect, and if the legislation is a reasonably related means to achieve the intended end, it will be upheld... . Nevertheless, despite a state's wide discretion, and the cautious restraint of the courts, there remain basic restrictions and limits on a state's legislative power to intrude upon individual rights, liberties, and conduct. To exceed those bounds without rational justification is to collide with the Due Process Clause.
444 So.2d at 1138-39 (quoting from Patch Enterprises v. McCall, 447 F. Supp. 1075, 1081 (M.D.Fla. 1978)).
In the instant case, as in Delmonico, Robinson, and Walker, the legislature has chosen a means which is not reasonably related to achieving its legitimate legislative purpose. It is unreasonable to criminalize the mere possession of embossing machines when such a prohibition clearly interferes with the legitimate personal and property rights of a number of individuals who use embossing machines in their businesses and for other non-criminal activities. As Judge Grimes phrased it in Walker, "without evidence of criminal behavior, the prohibition of this conduct lacks any rational relation to the legislative purpose" and "criminalizes activity that is otherwise inherently innocent." 444 So.2d at 1140. Such an exercise of the police power is unwarranted under the circumstances[3] and violates the due process clauses of our federal and state constitutions.
Accordingly, we find the portion of section 817.63 that prohibits the mere possession of embossing machines to be unconstitutional. The trial court was correct in dismissing the charges against Saiez based on that portion of the statute. We therefore affirm the district court's decision upholding the trial court's order dismissing those charges.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, EHRLICH and SHAW, JJ., concur.
McDONALD, J., concurs in result only.
NOTES
[1] We note the distinction between the use of the term "overbreadth" applied to the doctrine of standing in a first amendment context as discussed in this opinion and the use of the term in a colloquial sense which leaves in doubt the precise legal meaning intended. It is not entirely clear from the opinion how the district court intended to use the term.
[2] We note that the United States Supreme Court has occasionally recognized the need to relax its self-imposed rule against the assertion of third party rights in non-first amendment cases where individuals not parties to a particular suit stand to lose by its outcome and yet have no effective avenue of preserving their rights themselves. See, e.g., Eisenstadt v. Baird, 405 U.S. 438, 444-46, 92 S.Ct. 1029, 1033-35, 31 L.Ed.2d 349 (1972); Griswold v. Connecticut, 381 U.S. 479, 481-82, 85 S.Ct. 1678, 1679-80, 14 L.Ed.2d 510 (1965).
[3] We note there are instances where the public interest may require the regulation or prohibition of innocent acts in order to reach or secure enforcement of law against evil acts. See State v. Leone, 118 So.2d at 784. The instant case is simply not one of those instances. This is evident from the subsequent legislative history of section 817.63. In the 1985 legislative session, section 817.63 was repealed and replaced with section 817.631, Florida Statutes (1985), which provides:

Possession and transfer of credit-card-making equipment.  A person who receives, possesses, transfers, buys, sells, controls, or has custody of any credit-card-making equipment with intent that such equipment be used in the production of counter-feit credit cards violates this section and is subject to the penalties set forth in s. 817.67(2).